UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KYLE JAMES KING,

      Plaintiff,

v.              Case No. 24-cv-284-pp

STEVEN JOHNSON, et al.,

      Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING AMENDED COMPLAINT (DKT. NO. 8) UNDER 28 U.S.C. §1915A**

  Plaintiff Kyle James King, who is incarcerated at the Milwaukee Secure Detention Facility (MSDF) and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants had violated his civil rights. On April 10, 2024, the court received the plaintiff's amended complaint. Dkt. No. 8. Because the court has not yet screened the original complaint, the court will screen the amended complaint, which takes the place of the original. See Fed. R. Civ. P. 15(a)(1); Flannery v. Recording Indus. Ass'n of America, 354 F.3d 632, 638 n.1 (7th Cir. 2004) ("It is axiomatic that an amended complaint supersedes an original complaint and renders the original complaint void."). This decision also resolves the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

**I. Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

  The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without

prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On March 6, 2024, the court ordered the plaintiff to pay an initial partial filing fee of $3.44. Dkt. No. 5. The court received that fee on March 25, 2024. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Amended Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is

plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter C'nty Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.     The Plaintiff's Allegations

The amended complaint names as defendants Steven Johnson, the Department of Corrections, Sergeant Furgeson, C. Riggs, BOCM, Captain Zartner and "Health Service Defendants." Dkt. No. 8 at 1. The plaintiff alleges that on October 19, 2023, he had surgery on his right hand, during which metal plates and screws were inserted to connect his hand to his wrist. Id. He was given medical restrictions for a lower-bunk and no lifting with his hand. Id. In November 2023, the plaintiff's surgeon increased his lifting restriction to five pounds and increased it again in January 2024 to ten pounds. Id. The plaintiff says his lower-bunk restriction was for a full year, but around the end of December 2023, he "was told he had to move" to an upper bunk in a different cell. Id. He says he "was told if he did not move, he would be placed in" the

Restrictive Housing Unit (RHU). Id. He does not say who told him that he had to change cells. Id. The plaintiff complied, even after the Health Services Unit (HSU) confirmed in January 2024 that he still had a lower-bunk restriction. Id.

The plaintiff alleges that on February 5, 2024, while he was getting off the top bunk to see a nurse, he "experienced a pain in his hand and fell, striking his head." Id. He says he began to bleed and developed a bump and bruise. Id. The nurse, whom the court infers was at the plaintiff's cell, gave the plaintiff an alcohol pad and a band aid for his wound. Id. The next day, after the plaintiff complained about his fall and injury, an unnamed nurse spoke to him and told him that he would "have a headache for a few days." Id. at 1–2. He says he "was told there [was] nothing H.S.U. [could] do about his back pain from the fall or have his head MRI/catscan [*sic*]." Id. at 2. He alleges that his injuries "would not have occur[r]ed, had the Institution staff not have been [*sic*] negligent or maliscious [*sic*]." Id.

The plaintiff next alleges that MSDF "have been retalitive [*sic*] in custody classification and program assignment and are treating him more different than the average norm." Id. He says that at his classification hearing, he "was told with 15 remaining on his sentence he was timeframe insufficient [*sic*]" for a supervised release program or substance abuse program. Id. The plaintiff says this effectively denied him rehabilitation or an early release "when others with simular [*sic*] or worse circumstances are getting placement." Id. He claims this is deliberate indifference and that classification staff (whom he does not identify) maliciously kept him in medium custody. Id.

Finally, the plaintiff asserts that unnamed institution staff "placed a label of (STG) Security threat group" in his file and falsely labeled him as a gang member based on information from a confidential informant from 2005 or

4

Case 2:24-cv-00284-PP    Filed 04/23/24    Page 4 of 11    Document 9

2006. Id. He says the institution "puts a big G on [his] face card labeling him a gang member," which added "2 negative points in the IFCC scale" and affects his placement in medium custody. Id. He asserts claims under the Americans with Disabilities Act and the Rehabilitation Act based on this "unfair treatment of him in regards to classification." Id. at 2–3. He also claims this is "clergical [*sic*] retaliation," unfair and unjust and defamation of his character. Id.

The plaintiff seeks $5 million in punitive damages. Id. at 3. He also seeks removal of his STG label; an MRI, x-ray and/or CAT scan of his head and back and further treatment; release onto extended supervision or into a substance abuse program; placement into "minimum community custody with immediate placement at MCCC/FCCC;" a new classification hearing; and an injunction for unspecified relief "[a]gainst MSDF staff [a]nd request transfer with reduction in custody." Id. He also demands a jury trial "in Federal District Court." Id.

    C.    Analysis

There are several problems with the plaintiff's amended complaint. First, the plaintiff lists several defendants in the caption, but he does not mention any of them in the body of the amended complaint. Simply listing the names of potential defendants without alleging what any of them did to violate the plaintiff's rights is not sufficient for those defendants to be held liable under §1983. The plaintiff "must establish a defendant's personal responsibility for any claimed deprivation of a constitutional right." Miller v. Smith, 220 F.3d 491, 495 (7th Cir. 2000).

Second, even if the plaintiff had explained what each defendant did to violate his rights, some of the defendants are not suable under §1983. The plaintiff cannot sue the Department of Corrections because it is not a "person" subject to suit under §1983. Myers v. Ind. Dep't of Correction, 655 F. App'x

500, 503 (7th Cir. 2016) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 64 (1989)). The plaintiff also cannot proceed against the collectively named "Health Service Defendants" because that label does not give notice to any specific person of what they did to violate his rights. See Henderson v. Wall, Case No. 20-1455, 2021 WL 5102915, at *1 (7th Cir. Nov. 3, 2021) (citing Twombly, 550 U.S. at 555; and Bank of America, N.A. v. Knight, 725 F.3d 815, 818 (7th Cir. 2013)); see also Gray v. Weber, 244 F. App'x 753, 754 (8th Cir. 2007) (affirming dismissal of prisoner's §1983 complaint alleging denial of medical care against defendants identified "only collectively as 'medical staff'").

Third, the plaintiff seeks to proceed on several claims without alleging facts that support those claims. He asserts claims under the American with Disabilities Act and the Rehabilitation Act when discussing his STG label. But he does not explain how those statutes, which apply to persons with mental or physical disabilities, relate to his false STG label. He also says the STG label defames him, but defamation is a state-law claim—not a violation of the federal Constitution. See Lynch v. Holder, Case No. 19-cv-1601-pp, 2020 WL 998542, at *3 (E.D. Wis. Feb. 28, 2020); Edwards v. Strahota, Case No. 15-cv-845-pp, 2016 WL 614697, at *6 (E.D. Wis. Feb. 16, 2016) (citing Smith v. City of Chicago, 992 F. Supp. 1027, 1030 (N.D. Ill. 1998); and Davis v. City of Chicago, 53 F.3d 801, 804 (7th Cir. 1995)). The plaintiff would need to raise that claim in state court.

Fourth, and perhaps most important, the amended complaint seeks to proceed on various unrelated claims against (the court presumes) different defendants for unrelated conduct that occurred at different times. While a plaintiff may bring multiple claims against the same defendant, a plaintiff cannot bring *unrelated* claims against different defendants in the same case.

George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); Fed. R. Civ. P. 18(a) and 20(a)(2). "Joinder that requires the inclusion of extra parties is limited to claims arising from the same transaction or series of related transactions." Wheeler v. Wexford Health Sources, Inc., 689 F.3d 680, 683 (7th Cir. 2012). In other words, the plaintiff may bring claims against different defendants in the same lawsuit "only if [those] claims arise 'out of the same transaction, occurrence, or series of transactions or occurrences.'" Id. (citing Fed. R. Civ. P. 20(a)(1)(A)); id. ("A litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot.").

The amended complaint violates Rules 18 and 20 because it seeks to bring several unrelated claims against different defendants. The plaintiff claims that unspecified institution staff did not honor his lower-bunk medical restriction and made him move to an upper bunk. He then fell and injured himself, and he says that medical staff (different defendants) did not provide him proper treatment for those injuries. He claims that other unspecified staff at MSDF retaliated against him and/or treated him unequally during his classification hearing. He asserts that still-unnamed "Institution staff" falsely applied an STG label, which has affected his custody level and defamed him. Because the plaintiff does not name any defendant when discussing any of these claims, the court cannot determine who he believes violated which of his rights in relation to which allegations. But the court can conclude that these claims do not share questions of law or fact, nor do they arise "out of the same transaction, occurrence, or series of transactions or occurrences."

Ordinarily, the court would reject the plaintiff's amended complaint "either by severing the action into separate lawsuits or by dismissing the improperly joined defendants." Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir.

2011) (citing Fed. R. Civ. P. 21). The court then would give the plaintiff an opportunity to choose which of the above-described unrelated claims he wants to proceed on in this case. But the court will not do so here because for the other reasons described above, the amended complaint does not state any federal claim against any defendant. Instead, the court will give the plaintiff **a final opportunity** to amend his complaint to correct the deficiencies noted and better explain his claims. If the court does not receive from the plaintiff a second amended complaint that complies with the instructions in this order by the below deadline, the court will dismiss the case.

When writing his second amended complaint, the plaintiff should provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The second amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

The court is enclosing a copy of its amended complaint form. The plaintiff must list the case number for this case on the first page. He must write "Second" above the words Amended Complaint at the top of the first page. He must list all the defendants he wants to sue in the caption of the second amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, **double-spaced** so that the court can read

them. The second amended complaint takes the place of the prior complaints and must be complete in itself. The plaintiff may not refer the court back to his amended complaint. He must repeat in the second amended complaint any of the facts that he believes are necessary to his claims.

Finally, the plaintiff seeks several forms of relief, but many of those are forms of relief that the court cannot provide. That includes his request for a transfer to another facility, a change in his custody level, removal of the STG label and a new classification hearing. Under the PLRA, he may seek *limited* injunctive relief, see 18 U.S.C. §3626(a), or monetary damages. The court advises the plaintiff that, if he decides to file a second amended complaint, he should carefully read this order and limit his second amended complaint to one claim (or related claims) seeking available relief against viable defendants.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **CONCLUDES** that the plaintiff's amended complaint fails to state a claim. Dkt. No. 8.

The court **ORDERS** that the plaintiff may file a second amended complaint that complies with the instructions in this order. If the plaintiff chooses to file a second amended complaint, he must do so in time for the court to *receive it* by the end of the day on **May 24, 2024**. If the court receives a second amended complaint by the end of the day on May 24, 2024, the court will screen the second amended complaint as required by 28 U.S.C. §1915A. If the plaintiff does not file a second amended complaint day's end on May 24, 2024, the court will dismiss this case based on the first amended complaint's

failure to state a claim and will issue the plaintiff a strike as required by 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$346.56** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Milwaukee Secure Detention Facility.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include with this order a guide prepared by court staff to address common questions that arise in cases filed by incarcerated persons. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 23rd day of April, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**