KYLE JAMES KING,

                      Plaintiff,

v.                                         Case No. 24-cv-284-pp

STEVEN JOHNSON, *et al.*,

                      Defendants.

**ORDER SCREENING SECOND AMENDED COMPLAINT (DKT. NO. 10) UNDER 28 U.S.C. §1915A**

On April 23, 2024, the court screened plaintiff Kyle James King's *pro se* complaint under 42 U.S.C. §1983 and determined that it did not state a claim. Dkt. No. 9. The court gave the plaintiff "a final opportunity to amend his complaint to correct the deficiencies noted and better explain his claims." Id. at 8 (bolding omitted). On May 3, 2024, the court received the plaintiff's second amended complaint, which is before the court for screening. Dkt. No. 10.

**I.    Screening the Second Amended Complaint**

    A.    Federal Screening Standard

As the court explained in the previous order, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the second amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the second amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The second amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    The Plaintiff's Allegations

The second amended complaint names as defendants Steven Johnson, Elijah B. Wick, Sergeant Furgason, Sergeant Banks, Heather Paulson, Melissa JaKubiah, Crystal L. Voigt, Dmitry B. Chester, Dwilette O. Archer, Benjamin J.

Zartner, Ryan J. Ackerman and "unknown nurse's [*sic*] from 2/5/24 and 2/6/24. Dkt. No. 10 at 1.

The plaintiff alleges that on October 19, 2023, while he was in custody at the Milwaukee Secure Detention Facility (MSDF), he had surgery on his right hand, during which metal plates and screws "were installed." Id. at 2. He says that Doctor Myester (not a defendant) gave him a medical restriction against lifting with his hand. Id. He asserts that "Institution Doctor[s]" Voigt and Chester assigned him a lower bunk for one year, from September 13, 2023, through September 12, 2024. Id.

The plaintiff alleges that in December 2023, Sergeant Furgason ordered him to move from a lower cell on the lower tier of the institution to the upper bunk in an empty cell. Id. at 2–3. The plaintiff asked Furgason for the lower bunk because of his restriction and told Furgason he could call the Health Services Unit (HSU) to confirm. Id. at 3. He says Furgason disregarded his concerns and said, "I don't see a restriction, I will not call H.S.U. Go to the upper bunk or to R.H.U. [restricted housing] for refusing to follow orders." Id. The plaintiff says that Furgason "put [his] safety at risk by placing him on a top bunk knowing [his] restriction." Id. The plaintiff alleges that defendant JaKubiah, a registered nurse, confirmed his restriction on December 30, 2023. Id. The same day, the plaintiff wrote to Unit Manager Paulson and asked her to move him to a lower bunk. Id. He says he did not receive a response. Id.

The plaintiff alleges that on February 5, 2024, while he was getting off the top bunk to see a nurse, his "hand experienced a pain causing him to fall." Id. He says he hit his head and hurt his back, and he had "a bump and was bleeding." Id. The plaintiff alleges that the nurse gave him only a band aid "and took no further action." Id. He says that correctional officer Wick wrote an

incident report and told the plaintiff that Sergeant Banks "told him not to report it." Id.

The next day, an unnamed nurse saw the plaintiff on his unit and told him "it appeared he no longer had a lower bunk restriction and he could not put him on the lower and he would not refer [the plaintiff] to be seen for his head and back injury." Id. at 4. The plaintiff says this put him in danger of falling again. Id. On February 12, 2024, Lieutenant Zartner signed the incident report about the plaintiff's fall but allegedly "took no action to place [the plaintiff] on a lower bunk." Id. Three days later, supervising officer Ackerman also signed off on the incident report but "failed to verify lower bunk restriction." Id. Ackerman allegedly sent a copy of the report to Paulson and nursing supervisor Archer. Id. The plaintiff says he "still was not moved to a lower bunk." Id. at 4–5. But on February 20, 2024, Paulson moved the plaintiff to a lower bunk and told him that "the lower bunk order was reinstated and acknowledged." Id. at 5.

The plaintiff asserts that Warden Johnson is responsible for his employees, so he is responsible for their negligence leading to his fall and injury. Id. He says he would not have been injured if Sergeant Furgason had contacted the HSU and moved him to a lower bunk. Id. He says the unnamed nurses he saw on February 5 and 6, 2024 failed to protect him by not reporting his fall to a supervisor, not sending him for an examination and returning him to an upper bunk. Id. The plaintiff asserts that Dr. Chester "will not allow [him] to address his back and head injury as a result of the fall." Id. at 6. He says JaKubiah "did not alert staff to move [him] to a lower bunk on" December 30, 2023, and Warden Johnson should also be responsible for her actions. Id. at 6–7.

The plaintiff seeks $5 million in damages for his fall and injury. Id. at 8. He also "seeks further medical care, MRI/xrays/cat scans in order to address his back pain from fall and to inspect for brain damages from fall." Id.

C.     Analysis

The court reviews the plaintiff's allegations about his fall, injury and medical treatment under the Eighth Amendment. See Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019) (citing Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014)). To state a valid Eighth Amendment claim, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (en banc) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837).

The plaintiff alleges that he underwent hand surgery while incarcerated and was given medical restrictions limiting usage of his hand. He says he had plates and screws inserted, he was not allowed to lift even ten pounds and he was given a lower bunk restriction for a year. These allegations suggest that his hand surgery was a serious medical issue. See Hayes v. Snyder, 546 F.3d 516, 523 (7th Cir. 2008) (quoting Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997)) (describing a serious medical need as "'an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; [or] the presence of a medical condition that significantly affects an individual's

daily activities'"). The court finds the plaintiff's allegations sufficient to satisfy the objective component of an Eighth Amendment claim.

The plaintiff alleges that Sergeant Furgason moved him to an upper bunk despite the plaintiff telling him that he had a medical restriction for a lower bunk. Even if Furgason did not personally know about the plaintiff's hand surgery, the plaintiff says he told Furgason about his restriction and told him to contact the HSU. This was enough to put Furgason on notice "of a substantial risk to" the plaintiff's safety, which he allegedly disregarded by not contacting the HSU or confirming the plaintiff's restriction before moving him to an upper bunk. Walker v. Benjamin, 293 F.3d 1030, 1037 (7th Cir. 2002); see Farmer, 511 U.S. at 837. The court will allow the plaintiff to proceed on this Eighth Amendment claim against Furgason.

The plaintiff alleges that on February 5, 2024, after his fall, an unknown nurse gave him a band aid and no further treatment. Even a non-medical lay person would recognize that more significant medical aid is appropriate for someone who fell, hit his head, developed a bump and was bleeding. See Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). The court will allow the plaintiff to proceed on an Eighth Amendment claim against this unknown nurse for her allegedly inadequate medical treatment.

The plaintiff says he saw a second unnamed nurse on February 6, 2024, who told the plaintiff that he no longer had a lower bunk restriction, he could not move the plaintiff to a lower bunk and would not refer the plaintiff to be seen for his head and back injury. If this nurse lacked the authority to assign the plaintiff to a bottom bunk, then he cannot be deliberately indifferent for not assigning the plaintiff to one. See Ducksworth v. Maassen, No. 23-3431, 2024 WL 2265025, at *2 (7th Cir. May 20, 2024) (citing Miller v. Harbaugh, 698 F.3d

956, 962 (7th Cir. 2012)). But he may have been deliberately indifferent by not referring the plaintiff to someone who could assign a bottom bunk or for failing to refer him to a doctor for an examination of his head and back injuries from his fall. Construing these allegations liberally in the plaintiff's favor, the court concludes for the purposes of screening that he sufficiently states an Eighth Amendment claim against this unknown nurse.

The plaintiff alleges that doctors Voigt and Chester assigned him the lower bunk restriction. He alleges that after his fall, Chester refused to address his ongoing back and head injuries. Although these allegations are thin, they suggest Chester has refused the plaintiff needed medical treatment for no reason, which would violate the Eighth Amendment. See Petties, 836 F.3d at 730 (citing Grieveson v. Anderson, 538 F.3d 763, 779 (7th Cir. 2008)). The court will allow the plaintiff to proceed on this claim against Chester.

The plaintiff alleges nothing else about Voigt. He does not allege that she had any involvement in his fall or treatment after, nor does he allege that he has seen her since his fall. The plaintiff alleges no action or inaction for which Voigt may be held liable, so the court will dismiss her as a defendant.

The plaintiff alleges that nurse JaKubiah confirmed his restriction on December 30, 2023, but did not tell other staff that he needed to be in a lower bunk. He does not say whether JaKubiah knew he had been moved to a top bunk or whether he asked her to tell other staff that he had a restriction for a bottom bunk. Nor does the plaintiff allege that she had any other involvement. These sparse allegations suggest that at most, JaKubiah may have been negligent by not confirming that the plaintiff was assigned a lower bunk or telling correctional staff about his restriction. But negligence does not violate the Eighth Amendment. See Farmer, 511 U.S. at 835–36. The plaintiff's

allegations do not state a claim against nurse JaKubiah, and the court will dismiss her as a defendant.

The plaintiff alleges that he also wrote to Unit Manager Paulson and asked her to move him to a lower bunk, but that he did not receive a response. Staff later forwarded to Paulson the incident report about the plaintiff's fall. He says he was not moved to a lower bunk until February 20, 2024, when Paulson reinstated and acknowledged his restriction for a lower bunk. These allegations are a closer call. Paulson is not responsible for the actions of her subordinates unless she knows about them and approves, condones or ignores them to avoid liability. See Iqbal, 556 U.S. at 676; Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2001). The plaintiff does not say that he told Paulson about Furgason not moving him to a lower bunk, nor does he allege that Paulson was personally responsible for him being in an upper bunk. But if Paulson knew that the plaintiff needed a lower bunk when he wrote to her before his fall, and she failed to ensure that he had a lower bunk, she may be held responsible for failing to alleviate that known risk to the plaintiff's safety. Construing the plaintiff's allegations liberally, the court finds that for the purposes of screening, he states an Eighth Amendment claim against Paulson for failing to intervene and address this risk. The plaintiff may proceed against Paulson.

The plaintiff seeks to hold Warden Johnson liable for his fall because Johnson is the Warden at MSDF. But as the court explained above, §1983 does not permit this kind of supervisory liability. See Iqbal, 556 U.S. at 676. Government officials may be held responsible only for their own conduct. Id.; see Stankowski v. Carr, Case No. 23-2458, 2024 WL 548035, at *2 (7th Cir. Feb. 12, 2024). Because the plaintiff has not alleged that Warden Johnson knew about his upper bunk placement or was personally responsible for his

fall or his treatment after, he may not sue Johnson under §1983. The court will dismiss Johnson.

The plaintiff alleges that correctional officer Wick wrote an incident report about the plaintiff's fall and told the plaintiff that Sergeant Banks told Wick not to report the fall. But the plaintiff says that Wick did report the fall, and he does not allege that Wick had any other involvement. He does not allege that Wick misreported the events or had any role in the plaintiff's fall or his placement in an upper bunk. This lone allegation about Wick doing his job and reporting the plaintiff's fall does not state a claim. The court will dismiss Wick.

The plaintiff's only allegation against Sergeant Banks is what Wick told him—that Banks told Wick not to report the plaintiff's fall. The plaintiff does not allege that Banks was responsible for or even involved in his placement in an upper bunk. He does not say that Banks hindered the incident report, his receipt of medical treatment or his reinstated restriction. This single allegation against Banks does not state a claim. The court will dismiss Banks.

The plaintiff alleges that Lieutenant Zartner signed the incident report about his fall but took no action to ensure he was moved to a lower bunk. He similarly alleges that supervising officer Ackerman signed off on the incident report but also did not ensure the plaintiff had a lower bunk. Unlike his claim against Paulson, the plaintiff does not allege that Zartner or Ackerman knew about his upper bunk placement until after his fall. He says only that they did not take action to make sure he was placed back in a bottom bunk after his fall. But he does not say whether either of these two officers had the authority to reinstate the plaintiff's restriction, which he says the HSU had implemented. The plaintiff cannot hold Zartner or Ackerman liable for not doing someone else's job at the institution. See Burks v. Raemisch, 555 F.3d 592, 595–96 (7th

9

Case 2:24-cv-00284-PP   Filed 06/04/24   Page 9 of 11   Document 11

Cir. 2009). Nothing he alleges suggests that they were personally responsible for the plaintiff's fall or reinstatement of his restriction. The court will dismiss defendants Zartner and Ackerman.

The plaintiff alleges that the incident report was sent to Archer, who took no action on it. The plaintiff says Archer is a nursing supervisor, but he provides no other details and offers no further allegations against Archer. Although Archer may have had some responsibility after receiving the incident report, the plaintiff does not allege what that is, and the court will not fill in the gaps for him. As with his allegations against Zartner and Ackerman, the plaintiff does not allege enough to state a claim against Archer.

To summarize: the plaintiff may proceed on Eighth Amendment claims against Sergeant Furgason for deliberate indifference to the plaintiff's need for a lower bunk, Heather Paulson for failing to intervene and provide the plaintiff a lower bunk before his fall, Dmitry Chester for failing to provide medical attention to the plaintiff for his injuries after his fall and the unknown nurses for not providing him medical attention or referring him to a doctor for his injuries after his fall. The court will dismiss all other defendants and claims.

Because the plaintiff does not know the names of the nurses, he must use discovery to learn their names. Once all named defendants have responded to the plaintiff's complaint, the court will issue a scheduling order setting deadlines for the completion of discovery and for filing dispositive motions. The order also will set a deadline for the plaintiff to identify the nurses and will provide the plaintiff additional information for identifying them. **The plaintiff must not start the process for identifying the unknown nurses until the court has issued the scheduling order.**

10
Case 2:24-cv-00284-PP   Filed 06/04/24   Page 10 of 11   Document 11

## II. Conclusion

The court **ORDERS** that defendants Steven Johnson, Elijah B. Wick, Sergeant Banks, Melissa JaKubiah, Crystal L. Voigt, Dwilette O. Archer, Benjamin J. Zartner, Ryan J. Ackerman are **DISMISSED**.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the second amended complaint and this order to the Wisconsin Department of Justice for service on defendants Sergeant Furgason, Heather Paulson, Dmitry B. Chester. Under the informal service agreement, the court **ORDERS** those defendants to respond to the second amended complaint within sixty days.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

Dated in Milwaukee, Wisconsin this 4th day of June, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**